IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHANNON DESHANNON,

                                                     OPINION AND ORDER

                Plaintiff,

                                                     19-cv-777-bbc

      v.

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Plaintiff Shannon DeShannon is seeking review of a final decision denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge found that plaintiff had severe mental impairments, but that he could still perform work in the national economy despite his impairments. Plaintiff contends that the ALJ erred in evaluating the medical opinions in the record, and in considering how plaintiff's mental impairments affected his mental residual functional capacity. Because plaintiff's arguments are not persuasive, I will affirm the commissioner's decision.

     The following facts are drawn from the administrative record (AR). Because plaintiff argues only that the ALJ erred in evaluating his mental impairments and abilities, I will not discuss plaintiff's physical impairments below.

1

FACTS

A. <u>Social Security Application and Background</u>

Plaintiff Shannon DeShannon, Jr. was born in 1973, making him 44 years old at the time he filed for disability insurance benefits and supplemental security income in November 2017. AR 283. In his application, plaintiff alleged that he became disabled on September 27, 2017 due to post-traumatic stress disorder, attention deficit disorder, anxiety, depression and panic attacks. AR 287. He later amended his onset date to March 31, 2017, the date he was last insured. AR 39. Plaintiff's application was denied in March 2018, and plaintiff requested a hearing before an ALJ. After the hearing, the ALJ issued a written decision concluding that plaintiff was not disabled. AR 13-29.

In July 2019, the appeals council denied plaintiff's request for review, AR 1-3, making the ALJ's decision the final decision of the commissioner. Plaintiff then filed this lawsuit under 42 U.S.C. § 405(g).

B. <u>Mental Health Treatment</u>

The medical records considered by the ALJ showed that plaintiff has a history of depression, anxiety, mood swings, anger problems and alcoholism. AR 19, 84, 461. At various times, plaintiff has received diagnoses of depression, bipolar disorder, anxiety disorder, alcohol addiction, sexual addiction and post-traumatic stress disorder. AR 85, 93, 460. Plaintiff has been prescribed various medications to treat his mental health problems, including Depakote, Seroquel, Paxil, Lexapro, lorazepam and divalproex. AR 84, 460.

Starting in May 2017, plaintiff requested lorazepam from various emergency rooms. AR 19, 393, 408. He established care with Jackie Richter, LPC, a therapist in La Crosse, in June 2017. AR 438-47. He met with Richter three additional times, in October 2017, March 2018 and April 2018, to discuss anxiety, anger management, depression and anxiety. AR 20.

Plaintiff started seeing a psychiatric nurse practitioner, Roxane Holm, in November 2017. Holm prescribed Paxil and lorazepam for plaintiff's anxiety, and Depakote for his anger. AR 433. Within two weeks, plaintiff reported improvement in his symptoms, stating that his irritability had decreased and he was better able to control his anger. Id. Plaintiff saw Holm again in December 2017, February 2018, May 2018 and August 2018. AR 435, 436, 495-96, 502, 503-04, 510-11. Each time, plaintiff reported that he was doing well, that the medication had reduced his anger and that his mood had improved.

In October 2018, plaintiff moved to Waukesha, Wisconsin. AR 484. At the time of the administrative hearing in February 2019, plaintiff was homeless and had not established care with any mental health provider in Waukesha. AR 50. He went to the emergency room in November 2018 in Waukesha and asked for anxiety medication, which the hospital refused to provide. AR 522.

C. Mental Health Opinions

3

In February 2018, Dr. Deborah Pape, Ph.D., a state agency psychological consultant, completed a mental residual functional capacity assessment after reviewing plaintiff's mental health records. AR 85-89. Pape found that plaintiff had a moderate limitation in interacting with others, but no limitations in understanding, remembering or applying information; concentrating, persisting or maintaining pace; or adapting or managing himself. AR 85. It was her opinion that plaintiff could perform unskilled work. AR 89.

In April 2018, plaintiff's treating therapist, Jackie Richter, LPC, completed a residual functional capacity questionnaire. AR 460-65. Richter stated that she provided therapy to plaintiff weekly or biweekly. AR 460. She noted that plaintiff's symptoms included pervasive loss of interest in almost all activities, decreased energy, anxious behaviors, snapping at others, generalized persistent anxiety, somatization, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, psychomotor agitation, pathological dependence, passitivity or aggressivity, suspiciousness, recurrent obsession or compulsions, alcohol and sex addictions, emotional withdrawal, panic attacks, impulsive and damaging behavior and hyperactivity. AR 461. It was Richter's opinion that plaintiff could not maintain attention for two hours and could not meet competitive standards, maintain attendance or complete a normal workday. AR 462-63. Plaintiff also would be unable to accept criticism from supervisors, would not get along with co-workers and would be absent from work one to two days each month. AR 463-64.

After Richter provided her assessment, the state agency determined that a psychological examination was warranted. AR 124. Dr. Kurt Weber, Ph.D, conducted a

4

psychological examination of plaintiff in November 2018. AR 484-90. Plaintiff told Weber that he could not work because of emotional stress and that he found it difficult getting along with others. AR 484, 490. In Weber's opinion, plaintiff would have moderate limitations in the ability to understand, remember, and apply information; marked limitations in his ability to interact effectively with others; moderate limitations in is ability to concentrate, persist, or maintain work pace; and marked limitations in his ability to adapt or manage himself. AR 489-90.

At the reconsideration level, Dr. John J. Warren, Ed.D., completed a mental residual functional capacity assessment to evaluate plaintiff's mental functional abilities and limitations in the workplace. AR 109, 129. He reviewed Dr. Weber's findings and noted that they were inconsistent with plaintiff's medical records and did not specify the duration of plaintiff's mental impairments. AR 128. Dr. Warren found that plaintiff had a mild limitation in understanding, applying and remembering information, and moderate limitations in concentrating, persisting or maintaining pace; interacting with others; and adapting or managing himself. AR 109, 129. Despite plaintiff's limitations in these functional areas, Dr. Warren concluded that plaintiff had the mental capacity to "sustain the mental demands associated with carrying out simple tasks over the course of a routine workday/workweek with acceptable attention, persistence and pace tolerances"; to "sustain the basic demands associated with relating adequately with supervisors and coworkers, with limited contact with the general public"; and to "adapt to routine workplace change, remain aware of environmental hazards, form basic plans/goals and travel independently." AR 112-

14, 133-34. Dr. Warren concluded that, "overall, on a mental basis, claimant retains the capacity to perform basic tasks and relate with others well enough for routine workplace purposes." AR 108, 128.

### D. Administrative Hearing

At an administrative hearing held in February 2019, plaintiff testified that he had been homeless for five months and was living out of his girlfriend's Jeep with friends near a church. AR 40, 42. He testified that he had worked previously in paving, roofing and general labor, but that he could not keep jobs for more than a few months because he would start missing work, lose his temper with co-workers or become upset by loud noises. AR 44. Plaintiff stated that he is anxious a lot and that phone calls can agitate him. AR 46. He can be having a normal day, but then something will set him off and he gets angry. AR 48. He is frequently anxious, does not concentrate well and has a hard time accepting criticism. AR 54, 58. Plaintiff had police contact in the past for domestic violence and a road rage incident. AR 46-47. Plaintiff testified that he stopped driving because of his uncontrolled road rage and because he received a citation for driving while intoxicated. AR 60.

Plaintiff testified that he saw a therapist when he lived near La Crosse, but that he had not seen anyone in the five months since he moved to Waukesha because the mental health providers were "too backed up." AR 50, 52. Plaintiff was continuing to take medications for his mental health problems, which helped him cope somewhat, particularly with his depression. AR 48, 52. Plaintiff had no problems remembering to take his

medications.  Id.  Plaintiff testified that he had gone to the emergency room nine or ten times in the previous year because of panic attacks and because he ran out of medication. AR 55, 56.

As for his daily activities, plaintiff testified that he could perform household chores and cook when he had lived in an apartment, but that he would lose his temper when things went wrong.  AR 63.  He also had no problems managing his money or paying his bills, AR 40, and could shop in stores if they were not too crowded.  AR 49.  Plaintiff attended church regularly.  AR 65.

### E.  Administrative Law Judge's Decision

The ALJ followed the five-step sequential evaluation of disability set out by the regulations.  20 C.F.R. § 416.920.  At step one, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2017, and that he had not engaged in substantial gainful activity since his alleged onset date of September 27, 2017. AR 16.  At steps two and three, the ALJ found that plaintiff had the severe impairments of post-traumatic stress disorder and bipolar disorder, but that neither impairment met or equaled the severity criteria of a listed impairment.  AR 16-18.

At step four, the ALJ found that plaintiff had the residual functional capacity to perform a range of work at all exertional levels, with the following non-exertional limitations:

> understand, remember and carry out only simple instructions with only occasional decision-making and changes in the work setting required, with no contact with the public and only occasional contact with co-workers and

supervisors and he must avoid more than moderate exposure to excessive noise.

AR 18. At step five, the ALJ determined that plaintiff had no past relevant work but that, based on vocational expert testimony, plaintiff could perform a significant number of jobs in the national economy. AR 28.

## OPINION

Plaintiff contends that the ALJ erred by failing to account adequately for plaintiff's mental impairments in the residual functional capacity assessment. In particular, plaintiff argues that the ALJ erred in evaluating the medical opinions provided by plaintiff's therapist, Jackie Richter, the state examining psychologist, Dr. Weber, and the state consulting psychologist, Dr. Warren. Plaintiff argues that if the ALJ had evaluated the medical opinions adequately, he would have found that plaintiff's mental impairments made him unable to work.

In reviewing the ALJ's decision with respect to these arguments, I must determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014).

The ALJ's decision in this instance is supported by substantial evidence. The ALJ provided a thorough discussion of plaintiff's mental health diagnoses and treatment, and explained why plaintiff's mental impairments were not disabling. The ALJ observed that plaintiff had received only conservative and routine treatment for his mental health problems, and that plaintiff's symptoms were well-controlled when he was compliant with his treatment and medications. AR 19. The ALJ's observation is supported by the medical records. At plaintiff's appointments with psychiatric nurse practitioner Roxane Holm, plaintiff reported that his treatment had significantly improved his anxiety and his anger problems and that his moods were stable. AR 433, 436, 470, 496, 480. In addition, treatment notes stated that plaintiff was routinely alert, cooperative, appropriately groomed, and displaying normal mood, affect, reasoning, judgment, cognition, memory, attention and concentration during appointments. AR 19.

The ALJ also noted that plaintiff had engaged in a wide range of activities during the relevant period, including working on a full-time basis for four months, reading the Bible daily, attending church on a weekly basis, shopping for food and personal items when stores were not crowded, performing personal care with no difficulty, making his meals daily, performing house and yard work and taking his medication without reminders. AR 17-18.

Plaintiff's challenges to the ALJ's decision are not persuasive. Plaintiff argues that the ALJ should have given more weight to the opinions of Jackie Richter and Dr. Weber because they had actually examined plaintiff and their opinions were consistent. However, the ALJ explained adequately why he discounted their opinions.

The ALJ stated that Richter's opinion was not "overly persuasive," because her opinions were "sharply inconsistent" with her clinical findings. AR 26. Although Richter suggested in her residual functional capacity assessment that plaintiff's symptoms were severe and disabling, her appointment notes described plaintiff as appropriately groomed, with normal speech, cooperative and fully alert and oriented, with coherent thought formation, local and goal-directed thought processes, intact abstract reasoning ability, normal cognition, intact memory, adequate fund of knowledge, appropriate mood, affect, attention span, concentration, insight and judgment. Id. In addition, the ALJ noted that the records showed that Richter had seen plaintiff only four times between the date she started seeing plaintiff and the date of her opinion, despite Richter's statement that she had weekly to biweekly contact with him. Id.

As for Dr. Weber, the ALJ explained that Weber's opinion was only "somewhat persuasive," because Weber's conclusions were not supported by his own examination findings and were inconsistent with the results of other examinations in the record. Id. The ALJ cited numerous records from plaintiff's mental health appointments showing that plaintiff was cooperative, attentive, and had an intact memory and appropriate mood and affect. Id. The ALJ's explanation for discounting Richter's and Weber's opinions is well-explained and supported by the record.

Plaintiff also argues that the ALJ erred by giving weight to Dr. Warren's opinions and by failing to properly account for Warren's opinions about plaintiff's residual factional capacity. However, the ALJ explained that Warren's opinion was persuasive because he

10

considered and evaluated all the record evidence, including the opinions of both Richter and Weber and reached conclusions that were consistent with and supported by citations to the overall treatment records. AR 27. In particular, the ALJ noted that Warren's opinions were supported by treatment notes documenting plaintiff's cooperative behavior, euthymic mood, normal attention and concentration, intact judgment and insight and linear and goal-directed thought. AR 105, 125. The ALJ's explanation is thorough and sufficient. 20 C.F.R. 404. 1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.").

Finally, the ALJ's residual functional capacity assessment is consistent with Warren's findings and accommodates the functional limitations that Warren identified. Warren concluded that although plaintiff was moderately limited in some areas, he would be able to carry out simple tasks over the course of a routine workday and workweek with acceptable attention, persistence and pace tolerances; relate adequately with supervisors and co-workers, with limited contact with the general public; and adapt to routine workplace changes. AR 112-13. In turn, the ALJ limited plaintiff to "being able to understand, remember and carry out simple instructions with only occasional decision-making and changes in the work setting required, with no contact with the public and only occasional contact with co-workers and supervisors." AR 18. This residual functional capacity is fully consistent with Warren's narrative opinion and it captures plaintiff's demonstrated mental limitations. Jozefyk v. Berryhill, 923 F.3d 492, 498 (7th Cir. 2019) (residual functional capacity assessment need

only account for "claimaint's demonstrated psychological impairments"); <u>Burmester v. Berryhill</u>, 920 F.3d 507, 511 (7th Cir. 2019) (ALJ may rely on medical consultant's narrative statement in crafting residual functional capacity); <u>Baldwin v. Berryhill</u>, 746 F. App'x 580, 584 (7th Cir. 2018) (ALJ did not err in ignoring finding that plaintiff was moderately limited in concentration and pace where psychologist's narrative indicated plaintiff had concentration and pace "necessary to fulfill a normal workday").

In sum, the ALJ reasonably relied upon the opinion of state agency psychological consultant Warren and supported his decision with substantial evidence. Accordingly, I will affirm the commissioner's decision denying benefits.

## ORDER

IT IS ORDERED that the that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Shannon DeShannon's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 2d day of December, 2020.

BY THE COURT:

/s/_____
BARBARA B. CRABB
District Judge